IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 2, 2015 at Jackson

## ROBERT EDWARD WILLIAMS III v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**Nos. 2010-B-1636, -2687 & 2011-C-1733     Cheryl A. Blackburn,  Judge**

---

### No. M2014-01879-CCA-R3-PC – Filed August 27, 2015

---

The Petitioner, Robert Edward Williams III, appeals as of right from the Davidson County Criminal Court's denial of his petition for post-conviction relief.  In this appeal, the Petitioner asserts that he received ineffective assistance of counsel because trial counsel failed to adequately communicate with him and because trial counsel "coerced" the Petitioner to enter guilty pleas, rendering his pleas unknowing and involuntary. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ. joined.

Morgan E. Smith (on appeal) and Jesse Lords (on petition and at hearing), Nashville, Tennessee, for the appellant, Robert Edward Williams III.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and Bret Thomas Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

FACTUAL BACKGROUND

On October 6, 2011, the Petitioner pled guilty in the Davidson County Criminal Court to criminal simulation of $1,000 or more but less than $10,000 (case number 2010-B-1636), theft of property valued at $10,000 or more but less than $60,000 (case number 2010-B-2687), and failure to appear (case number 2011-C-1733).  The State offered the following factual bases underlying the Petitioner's offenses:

If [case number 2010-B-1636] had gone to trial, the State's proof would have been that the police department and Secret Service were investigating some checks that were created and were not legitimate checks and were being passed. Initially they had contact with a Marquis (phonetic) Burton. Mr. Burton was observed to meet with the [Petitioner]. The [Petitioner] gave him a counterfeit check, the value of which was over $1,000. And then subsequently when he was arrested, he had some similar counterfeit checks on his person. That was here in Davidson County.

Case 2010-B-2687 was one we had set for a bench trial where he – there was a business down in Franklin called Pinnacle Technology. And they changed locations, but their mail was still being sent to the original address. And they had a couple of checks, the total of which was over $10,000, stolen out of their mailbox. The [Petitioner] obviously came into possession of those checks at some point because he showed up here at the Bank of Nashville after creating a company here in Davidson County called Pinnacle Technology. He showed up at the Bank of Nashville as a representative or owner of Pinnacle Technology with these checks and deposited the first one into his account, which he subsequently took money out of and used that money, and then deposited the second check into the account. The total amount of the checks, as I said, was over $10,000. There was a video of this. Obviously the [Petitioner] had taken out the business license and then showed up and opened this checking account and used his real name. As I said, that case was set for a bench trial on May the 31st of this year. And the [Petitioner] failed to show up for that bench trial. And these are all in Davidson County.

At the guilty plea submission hearing, the Petitioner indicated that he understood the potential range of sentences for each of the charges against him and that the sentences in case numbers 2010-B-1636 and 2010-B-2687 would be served concurrently with each other and consecutively to case number 2011-C-1733. The Petitioner further indicated his understanding that the trial court would impose the remaining terms and lengths of his various sentences following a sentencing hearing to be held at a later date.

The Petitioner testified that he had a bachelor's degree and that he had read the petition to plead guilty himself. He denied having any questions about the contents of the petition to plead guilty and told the trial court that he would have been forthcoming with questions if he had any. The Petitioner testified that he had no difficulty understanding the proceedings and that he was not taking any medications. The Petitioner indicated that

he understood his rights to have an attorney, to have a jury trial, to cross-examination of witnesses, and to testify in his own defense and, also, that the State carried the burden of proving his guilt beyond a reasonable doubt. The Petitioner acknowledged that he wished to waive these rights and plead guilty.

Following the December 7, 2011 sentencing hearing, the trial court denied alternative sentencing and sentenced the Petitioner to concurrent sentences of fourteen years for the theft conviction and eleven years for the criminal simulation conviction. For the failure to appear conviction, the trial court sentenced the Petitioner to six years, to be served consecutively, for a total effective sentence of twenty years. This court upheld the length of the sentences and the denial of alternative sentencing on direct appeal. See No. M2012-00545-CCA-R3-CD, 2012 WL 5948865 (Tenn. Crim. App. Nov. 16, 2012), perm. app. denied (Tenn. Feb. 12, 2013).

On February 11, 2014, the Petitioner filed a pro se petition for post-conviction relief. Following the appointment of counsel, an amended petition was filed on May 9, 2014. The Petitioner alleged that trial counsel was ineffective for failing to adequately communicate with him and that his guilty pleas were unknowing and involuntary because trial counsel advised him to turn down a more favorable plea offer. A post-conviction hearing was held on May 28, 2014.

At the post-conviction hearing, the Petitioner approximated that trial counsel met with him for "an hour and a half at the most." According to the Petitioner, trial counsel only visited him once in jail, and the only other time he met with her was in court. The Petitioner attempted to communicate with trial counsel through a "third party," but the Petitioner claimed that it was difficult to "get [trial counsel] on the phone."

The Petitioner acknowledged that he and trial counsel discussed his cases, but he asserted that there was "a lot of . . . stuff [he] didn't understand." The Petitioner said that trial counsel went over "[a] little bit" of discovery with him but that he did not feel like he was "completely aware" of what was occurring in his case. Likewise, although the Petitioner testified that he understood that he was pleading guilty, he claimed that he "didn't know about the time limit . . . like how many years [he] was facing."

The Petitioner recalled that the State initially made a plea offer of eight years. However, the Petitioner found out that his "charge partner" had been offered six years, and the Petitioner "was worried about why [the State] offered [his co-defendant] six years and . . . offered [him] eight." According to the Petitioner, trial counsel told him that the State might be willing to go down to six years. However, by the time of the Petitioner's

-3-

next court date, the State's offer had increased to twelve years. The Petitioner testified that he "vaguely" discussed the twelve-year offer with trial counsel, but he ultimately declined the offer.

The Petitioner admitted that he missed a court date and "went on the run," and he testified that, when he returned, trial counsel suggested entering an "open plea" with a sentencing hearing to be performed by the trial court. According to the Petitioner, he believed that he "was going to get a split confinement, [an] alternative sentence, or something like that" because he and trial counsel had discussed those possibilities. The Petitioner testified that, after speaking with trial counsel, he "thought [he] could get the minimum[,] . . . [which] was ten years." He added, "I thought I would serve some time, you know, a few years, day for day, and then . . . the rest on probation or Community Corrections or whatever it was. . . . I never thought I would walk out with twenty." He said that his decision to turn down the twelve-year offer was greatly influenced by his belief that he would get less time and split confinement.

The Petitioner blamed his lack of understanding about what was going on in his cases on trial counsel's failure to communicate with him. The Petitioner testified that he "just fe[lt] like it was . . . a harsh sentence," and he "would have took [sic] it to trial if [he] knew [he] was going to get this many years." According to the Petitioner, after he was sentenced, trial counsel expressed her surprise that the judge sentenced him to twenty years. The Petitioner reiterated that he turned down the twelve-year offer because trial counsel led him to believe that he would get a shorter sentence if he entered an open plea and agreed to judicial sentencing.

On cross-examination, the Petitioner admitted that he missed a trial date, which resulted in an indictment for failure to appear. He acknowledged that trial counsel explained to him that the failure to appear sentence would have to be served consecutively to any sentence received in his pending cases. The Petitioner explained that he missed his court date because he "was led to believe [by the prosecutor] that [he] was going to get twenty-four years." He agreed it was not trial counsel's fault that he missed his court date. He said that, at the time of his scheduled court date, he had not spoken to trial counsel for approximately two months.

The Petitioner denied that he had "been through the system many times" but admitted that he had five previous felony convictions at the time of his current cases. However, he claimed those previous cases were different because he received probation. Furthermore, the Petitioner agreed that the judge went over his offenses and potential sentences at the guilty plea submission hearing, although he claimed that the judge did

not state that the failure to appear sentence could be up to six years.[1]  Nevertheless, the Petitioner admitted that trial counsel told him that that judge could sentence him to "one or two years or . . . six years" on the failure to appear charge, but he "didn't think that [he] was going to get . . . the max on that."

The Petitioner could not recall precisely what the trial court said in the guilty plea submission hearing regarding the sentence for his failure to appear conviction, but he agreed that if the trial court's statement about the sentence had differed from what trial counsel told him, he would have told the trial court about the discrepancy.  The Petitioner also admitted that trial counsel never told him that he would definitely receive split confinement but instead merely expressed her opinion that split confinement was a possibility.  The Petitioner agreed that trial counsel never told him that split confinement was an "absolute certainty."  The Petitioner indicated his understanding that, had he proceeded to trial, he might have been ordered to serve his sentences in case numbers 2010-B-1636 and 2010-B-2687 consecutively, and that he "did get the benefit of those larger cases running concurrently."

The Petitioner remembered stating that he was satisfied with trial counsel's performance at the guilty plea submission hearing, but he asserted that it was not until he was able to study the legal issues involved in his cases in prison that he began to believe trial counsel had been ineffective.  The Petitioner acknowledged that he had entered guilty pleas in previous cases, but he claimed that, in those instances, the trial court had not gone over potential sentence lengths with him.  He did, however, agree that the trial court in his present cases went over this information with him.

Trial counsel testified that she communicated with the Petitioner "very often" over the course of her representation—during both his time in jail and after he was released on bond.  During his release on bond, she repeatedly attempted to set up visitations and conferences at her office, but the Petitioner failed to show up.  According to trial counsel, she tried to get in touch with the Petitioner in the days leading up to his trial date, but "he refused to come meet with [her]."

Trial counsel also testified that the Petitioner's wife and girlfriend both called her at several points throughout the Petitioner's representation.  However, trial counsel eventually stopped fielding calls from either woman because "they were trying to put [her] in the middle of their little love triangle.  And so [she] finally had to stop."

---

[1] The transcript of the guilty plea submission hearing belies this assertion.

Trial counsel recalled having several conversations with the Petitioner about plea offers from the State. According to trial counsel, the Petitioner told her that he never wanted to go to trial. With respect to the Petitioner's concern that his co-defendant received an offer for less time, trial counsel explained to the Petitioner that it was probably because his co-defendant's prior criminal record was not as lengthy as the Petitioner's. Nevertheless, trial counsel did approach the prosecutor about working out a better offer for the Petitioner, but the prosecutor "did not want to entertain that. He wanted [the Petitioner] to go to [prison]."

Trial counsel testified that the twelve-year offer was made prior to the Petitioner's missed court date and that, after the failure to appear indictment, that offer was rescinded. At that point, the prosecutor was still willing to run the earlier cases concurrently. Trial counsel testified that she explained the potential range of punishment to the Petitioner, which was written on the petition to plead guilty that he signed, and that she explained to the Petitioner the process of entering an open plea and having a sentencing hearing.

According to trial counsel, whenever one of her clients is presented with a plea offer from the State, she informs her client of the offer and discusses the client's charges and potential punishment. She remembered that the Petitioner asked her what she would do, and trial counsel told him that she "probably would not take [his] case to trial" but that the decision was ultimately his.

Trial counsel testified that the Petitioner wanted straight probation, and trial counsel informed him "that would never happen in this court." Similarly, although he also requested that she ask for split confinement, she informed him that was unlikely as well. Trial counsel agreed to ask the trial court for split confinement but told the Petitioner "that the likelihood of that was extremely slim."

On September 3, 2014, the post-conviction court denied the Petitioner's request for post-conviction relief. With respect to the Petitioner's ineffective assistance of counsel claim, the post-conviction court found that the Petitioner had failed to prove that counsel's performance was deficient or that he was prejudiced by any alleged deficiency. The court noted that the Petitioner's own testimony was that he was "never guaranteed split confinement" and that "nothing in the record indicates that [t]rial [c]ounsel failed to keep [the] Petitioner informed of the proceedings." Furthermore, the post-conviction court characterized the gravamen of the Petitioner's complaint as being that his sentences were too harsh, an issue which was not cognizable for post-conviction relief and which had been previously litigated on direct appeal. Additionally, the post-conviction court

explicitly accredited trial counsel's testimony that she communicated often with the Petitioner and, specifically, that they discussed plea offers extended by the State.

The post-conviction court also concluded that the Petitioner failed to prove that his guilty pleas were unknowing or involuntary. The court found that there was no evidence that trial counsel failed to adequately convey any plea offers to the Petitioner, and the post-conviction court noted that the sentencing ranges for the Petitioner's charges were explained to him at the guilty plea submission hearing. This timely appeal followed.

ANALYSIS

On appeal, the Petitioner contends that trial counsel was ineffective for failing to adequately communicate with him. He further alleges that trial counsel "coerced" him into entering guilty pleas, thus rendering his pleas unknowing and involuntary. The State responds that the post-conviction court properly concluded that trial counsel's representation was effective and that the Petitioner's guilty pleas were knowing and voluntary.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to

counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

In the context of a guilty plea, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The Petitioner contends that trial counsel did not adequately communicate with him because she only met with him for a total of one and a half hours and mostly met with him at court dates. Furthermore, the Petitioner asserts that trial counsel did not explain the potential ranges of punishment accompanying his guilty-pleaded convictions. However, at the guilty plea submission hearing, the Petitioner stated that he had read the petition to plead guilty, which contained an explanation of the charges against him and the potential range of punishment for each of those charges. He told the trial court that he had no questions regarding the charges or the potential sentences and indicated his satisfaction with trial counsel's performance. Also, at the post-conviction hearing, trial counsel testified that she and the Petitioner discussed the charges and potential sentences. The post-conviction court explicitly accredited trial counsel's testimony in this respect and found that the Petitioner failed to prove trial counsel was deficient. The record supports this determination, and the Petitioner's argument is without merit.

Next, the Petitioner contends that trial counsel "coerced" him to enter guilty pleas, thus rendering them unknowing and involuntary. The Petitioner provides no specific example of trial counsel's coercive behavior but, instead, states that he "believed that he

-8-

was going to be getting a year day for day and ten years' probation at the sentencing hearing" and that trial counsel did not tell him he would receive a six-year sentence for the failure to appear conviction.

When analyzing the voluntariness of a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set forth in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, in Mackey the Tennessee Supreme Court required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

Although the Petitioner claimed that he did not believe he would receive a twenty-year sentence, he also testified that the reason he did not show up for his court date was because he was worried he "was going to get twenty-four years." Likewise, although the Petitioner alleged that trial counsel's advice led him to decline the twelve-year offer, trial counsel testified that the twelve-year offer was rescinded by the State following the Petitioner's failure to appear. Trial counsel testified that the Petitioner told her he did not want to go to trial, and trial counsel told the Petitioner that the decision to plead guilty was ultimately up to him. At the guilty plea submission hearing, the Petitioner stated that he understood the potential ranges of sentences accompanying his convictions and that the failure to appear sentence would be served consecutively to his other sentences. Although he testified that he "never thought [he] would get the max" on the failure to appear charge, he agreed that trial counsel told him he might receive a six-year sentence

-9-

for that charge. This is bolstered by his petition to plead guilty, which reflects that the failure to appear charge could result in a six-year sentence, and which the Petitioner admitted to reading and understanding. He also admitted that trial counsel never promised him that he would receive an alternative sentence. Finally, the Petitioner admitted that he had participated in guilty plea submission hearings prior to the present cases. The record supports the post-conviction court's finding that the Petitioner's guilty pleas were knowingly and voluntarily entered, and the Petitioner is not entitled to relief.

### CONCLUSION

Based on the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE